**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald R. Habig and Judith Heckenlaible-Habig,<br><br>Plaintiffs,<br><br>vs.<br><br>FDIC as Receiver for Washington Mutual Bank, FA, JPMorgan Chase Bank, National Association, its assignees and/or successors-in-interest,<br><br>Defendant. | No. CV 12-00866-PHX-NVW<br><br>**ORDER** |

Before the Court is Defendant JPMorgan's Motion to Dismiss (Doc. 5). For the reasons stated below, that motion will be granted and this action will be terminated.

**I.  FACTS**

**A.  Background**

The Habigs bought a home in Phoenix in April 2004. Washington Mutual financed that purchase through the traditional promissory note and deed of trust arrangement. In 2008, the FDIC took over Washington Mutual as receiver and then sold certain Washington Mutual assets — including the Habig loan — to JPMorgan Chase Bank.

For reasons explained in more detail below, the Habigs defaulted on their house payments in early 2009. In October 19, 2009, a notice of trustee's sale was filed with respect to the Habig's home, announcing a trustee's sale to take place on January 19,

2010. After certain delays (also discussed in more detail below), the Habigs' home was sold at a trustee's sale on July 14, 2010.

### B. The 2010 Action (CV10-2500)

On October 15, 2010, the Habigs filed an action in Maricopa County Superior Court effectively seeking to unwind the trustee's sale. Most of the Habigs' causes of action relied on variants of the show-me-the-note theory. They also alleged predatory lending practices in violation of the Home Ownership and Equity Protection Act and the Truth in Lending Act, without factual specifics. JPMorgan removed to this Court and the matter was assigned to Judge Bolton. (*See Habig v. FDIC et al.*, CV10-2500.)

JPMorgan then moved to dismiss primarily on the authority of A.R.S. § 33-811(C), which states:

> The trustor, its successors or assigns, and all persons to whom the trustee mails a notice of a sale under a trust deed pursuant to section 33-809 shall waive all defenses and objections to the sale not raised in an action that results in the issuance of a court order granting relief pursuant to rule 65, Arizona rules of civil procedure, entered before 5:00 p.m. mountain standard time on the last business day before the scheduled date of the sale.

Because the Habigs did not obtain such a court order, JPMorgan argued that the Habigs had waived all challenges to the trustee's sale. JPMorgan also asserted that the show-me-the-note theory fails as a matter of law, and that the Habigs' predatory lending claims were impermissibly vague and time-barred in any event. (*See* CV10-2500, Doc. 6.)

The Habigs' response in opposition to JPMorgan's motion made little argument, instead relying heavily on case law regarding the court's obligation to assume well-pleaded facts as true when resolving a motion to dismiss. The Habigs also elaborated on their claims factually. They explained that as the recent recession set in, they were looking for ways to lower expenses. Having heard about government-sponsored plans to modify home loans, the Habigs asked a loan officer at Washington Mutual whether they would qualify for such modification. The loan officer told them that only delinquent

1   loans would be considered for modification. The Habigs therefore stopped making
2   payments in early 2009 and submitted a modification application a few months thereafter.
3   The application process took several months, during which time the trustee's sale was
4   noticed on the Habigs' house. However, in January 2010, the Habigs received
5   instructions to make three reduced trial payments. The Habigs made those payments in
6   January, February, and March 2010.

7   The Habigs' narrative did not describe what happened between April 2010 and the
8   trustee's sale on July 14, 2010. The Habigs alleged, however, that they received three
9   different letters from JPMorgan during the week of the trustee's sale, with each letter
10  offering them a loan modification on different terms. They were not aware that the
11  trustee's sale was nonetheless going forward. (*See* CV10-2500, Doc. 14 at 3–4.)

12  While JPMorgan's motion to dismiss was still pending, the Habigs filed a motion
13  for leave to amend their complaint, attaching a proposed amended complaint. The
14  proposed amendment stated two causes of action — one for "wrongful foreclosure" based
15  on the show-me-the-note theory, and another for predatory lending practices. As to that
16  second cause of action, the Habigs included factual allegations about the origination of
17  their loan. Specifically, they alleged that someone had fraudulently filled out their
18  residential loan application, listing their monthly income as almost $10,000, as opposed
19  to their real monthly income at that time of about $4,500. They also alleged that, one
20  year after closing, Washington Mutual offered them a $125,000 home equity loan based
21  on a "drive-by" appraisal valuing their home at more than $100,000 more than its market
22  value at closing. (*See* CV10-2500, Doc. 17-1.) The Habigs' proposed amended
23  complaint did not contain any of the details asserted in their response to the motion to
24  dismiss regarding their loan modification negotiations.

25  Judge Bolton granted JPMorgan's motion to dismiss on numerous grounds. Judge
26  Bolton primarily relied on JPMorgan's A.R.S. § 33-811(C) waiver argument, reasoning
27  that the statute's plain language bars all of the Habigs' claims, regardless of whether they
28  could have known about those claims ahead of time. Judge Bolton also agreed with

1 JPMorgan that the show-me-the-note theory fails as a matter of law, and that the predatory lending claims were time-barred. Judge Bolton then denied the Habigs' motion for leave to amend, finding that amendment would be futile in light of A.R.S. § 33-811(C) and show-me-the-note's nonviability. The Habigs' action was therefore dismissed with prejudice. Judge Bolton's order says nothing about the Habigs' loan modification allegations asserted in their response to the motion to dismiss.

### C.  The Forcible Detainer Action (CV10-2047)

On August 23, 2010, JPMorgan instituted a forcible detainer action against the Habigs in Superior Court. The Habigs then removed to this Court, with the undersigned presiding. (*See JPMorgan Chase Bank v. Heckenlaible-Habig*, CV10-2047.) This Court issued an order requiring the Habigs to show cause

> why this action should not be remanded to the Superior Court for lack of removal jurisdiction (1) because the amount in controversy, which is the value of the possessory right during the interim, not the entire value of the house or the mortgage, is less than $75,000, 28 U.S.C. 1332, and (2) because Defendant is "a citizen of the State in which such action is brought," 28 U.S.C. 1441(b), provided that Plaintiff moves to remand on this ground within 30 days of the removal.

(CV10-2047, Doc. 7 at 1–2.) The Habigs filed no response to this order and the Court remanded the case to Superior Court on October 29, 2010.

### D.  This Action

On March 6, 2012, the Habigs filed a new action in Maricopa County Superior Court, which JPMorgan has since removed to this Court. The Habigs' new complaint alleges three causes of action. The first cause of action reasserts the predatory lending claims, without citation to legal authority (such as the Truth in Lending Act) but otherwise alleging the facts they had previously alleged in the proposed amended complaint submitted in their previous lawsuit — *i.e.*, that some party falsely inflated their income on their mortgage application, and that Washington Mutual gave them a home

- 4 -

equity loan with essentially no underwriting. The third cause of action reasserts the show-me-the-note theory.

The Habigs' second cause of action, however, contains some material previously asserted and also some new material. The first part of this cause of action is a general reassertion the facts regarding the loan modification process, as originally put forth in their response to JPMorgan's motion to dismiss their previous action, but with certain additional details. The second part of the second cause of action turns on events in the ongoing Superior Court forcible detainer action. The Habigs managed to remain in their home through at least February 2012, at which point they approached counsel for JPMorgan with a cash offer to buy the property and thereby settle the case. JPMorgan allegedly

> gave [the Habigs] reason to believe that the offer would be accepted but indicated that signing a stipulation as to the allegations against them [*i.e.*, consent to a stipulated judgment of forcible detainer] and an agreement to vacate said property was a requirement before [JPMorgan] would accept the offer. [The Habigs,] under abnormal pressure and duress[,] consented to the Stipulation based on this premise. [After the Superior Court entered the stipulated judgment], [JPMorgan] refused the offer based on "bank policy" which upon best belief and knowledge was known to [JPMorgan] at the time [the Habigs] offer was made and such "bank policy" could have or should have been communicated to [the Habigs] prior to them entering into the stipulated judgment.

(Doc. 1-1 at 11.) The Habigs therefore claimed that they had been deceived into signing the consent to the stipulated judgment.

JPMorgan has now moved to dismiss all causes of action. As to the Habigs' claim that JPMorgan deceived them into consenting to judgment and the forcible detainer action, JPMorgan has submitted Superior Court records showing that the Habigs moved to void that judgment, the Superior Court denied that motion, and the Habigs have filed a notice of appeal. JPMorgan therefore argues that this Court has no jurisdiction over that dispute. As to the remaining claims, JPMorgan contends that all are barred by the

doctrines of *res judicata* and collateral estoppel. JPMorgan represents in its motion that the Habigs have not yet been evicted from their house.

## II. ANALYSIS

The Habigs first and third causes of action are barred by res judicata:

> Simply put, the doctrine of *res judicata* provides that when a final judgment has been entered on the merits of a case, it is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. The final judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever.

*Nevada v. United States*, 463 U.S. 110, 129–30 (1983) (internal quotation marks and citations omitted; alterations incorporated). The Habigs first and third causes of action substantially duplicate the causes of action they brought in the action before Judge Bolton. That action has been reduced to a final judgment and the Habigs did not appeal. That judgment is therefore final.

The portion of the Habigs' second cause of action concerning JPMorgan's alleged actions during the loan modification process was not presented in the action before Judge Bolton in precisely the same way as it is presented now, but *res judicata* still applies. That previous action was the Habigs' opportunity to bring whatever arguments they had against the propriety of the trustee's sale and the process leading up to it. The factual matter about the loan modification process was "admissible matter which might have been offered for that purpose." *Nevada*, 463 U.S. at 130. Indeed, the Habigs partially proffered it in their response to the motion to dismiss. Although Judge Bolton did not address it directly, her ruling reduced that case to final judgment and the Habigs did not appeal. Thus, any cause of action based on JPMorgan's actions during the loan modification process is now barred.

The portion of the Habigs' second cause of action concerning the alleged fraudulent inducement into a stipulated judgment is not barred by *res judicata*, but it is subject to collateral estoppel:

> Collateral estoppel applies to a question, issue, or fact when four conditions are met: (1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits.

*Oyeniran v. Holder*, ___ F.3d ___, ___, 2012 WL 1548078, at *5 (9th Cir. May 3, 2012). Each of these elements is satisfied with respect to the Habigs' argument that JPMorgan deceived them into signing the stipulated judgment. The Habigs' remedy at this point, if any, is through the appeal they have filed in state court.

IT IS THEREFORE ORDERED that JPMorgan's Motion to Dismiss (Doc. 5) is GRANTED.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendants and against Plaintiffs, and that Plaintiffs take nothing. The Clerk shall terminate this case.

Dated this 29th day of May, 2012.

_____
Neil V. Wake
United States District Judge